IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS

CHRISTOPHER CUNNINGHAM,          )
                                 )
                    Plaintiff,   )       **CIVIL ACTION**
                                 )
v.                               )       No. 05-1244-MLB
                                 )
BOSTON MUTUAL LIFE               )
INSURANCE COMPANY,               )
                                 )
                    Defendant.   )
                                 )

**MEMORANDUM AND ORDER**

This case comes before the court on defendant's motion for summary judgment. (Doc. 12.) The motion has been fully briefed and is ripe for decision. (Docs. 12, 16, 17.) Defendant's motion is GRANTED for the reasons set forth herein.

**I.  FACTS**[1]

Plaintiff Christopher Cunningham worked for Cessna Aircraft Company ("Cessna") as a sheet-metal assembler from April 2001 until approximately April 28, 2002. His salary was approximately $2,307.07 per month at the end of his employment. During plaintiff's employment, Defendant Boston Mutual Life Insurance Company ("BMLIC") offered a long-term disability insurance plan to Cessna employees. While defendant was the insurer of the plan, it employed Disability RMS ("DRMS") to administer claims for plan benefits. Plaintiff

---

[1]In his response, plaintiff failed to put forth any specific facts as required by D. Kan. Rule 56.1(b)(1). See also Mitchell v. City of Moore, Oklahoma, 218 F.3d 1190, 1197-98, 1199 (10th Cir. 2000). Although plaintiff claims certain facts are controverted, in some cases he does not dispute facts but instead argues a position on the facts set forth by defendant. Those facts which are not correctly controverted are therefore deemed uncontroverted.

enrolled in the plan and his coverage began May 1, 2002. (Docs. 13 at 2-3; 16 at 3.)

The plan's terms provided monthly benefits in the event of total disability. The plan defined "Total Disability" as follows:

> For the first 24 months of Total Disability:
>
> 1.  You are unable to perform the Material and Substantial Duties of Your Own Occupation due to Sickness or Injury; and
> 2.  Your work inability results in a 50% of more loss of Your Basic Monthly Earnings.
>
> After 24 months of disability:
>
> 1.  You are working in any occupation and Your work inability continues to result in a 50% or more loss of Your Basic Monthly Earnings; or
> 2.  You are unable to perform the Material and Substantial Duties of any occupation for which You are reasonably fitted by education, training, or experience.

(Docs. 13, exh. A1 at DRMS 0470.)

On April 28, 2002, plaintiff was injured in a motor-vehicle accident. Plaintiff submitted a claim for benefits under the plan on May 2, 2002. After reviewing plaintiff's medical records, DRMS determined plaintiff was Totally Disabled and began paying benefits on October 29, 2002. (Docs. 13 at 4; 16 at 3.)

Charles Pence, MD, performed spinal-fusion surgery in August 2002. After the surgery, plaintiff complained of neck pain, back pain, and weakness in his legs. Dr. Pence noted plaintiff was having problems consistent with "residual stiffness of the cervical spine muscles." (Doc. 13, exh. A1 at DRMS 0337.) Dr. Pence completed a subsequent Attending Physician's Statement on December 18, 2002, in which he stated he could not see anything in plaintiff's spine that

-2-

could be causing plaintiff's symptoms. (Docs. 13 at 5-6; 16 at 3-5.)

Plaintiff subsequently began seeing Steven Gould, DC. On March 19, 2003, Dr. Gould informed Cessna by letter that plaintiff's symptoms were caused by "failed surgery syndrome" and that plaintiff would be "unable to return to his former work activities." (Doc. 13, exh. A1 at DRMS 0286.)

On July 10, 2003, plaintiff was involved in a second motor-vehicle accident and reported to DRMS he was having lower-back pain as a result. When DRMS asked Dr. Gould for an update on plaintiff's condition following the second accident, Dr. Gould said he did not feel comfortable doing so and referred plaintiff to Mike Munhall, MD. (Docs. 13 at 6-7; 16 at 4-5.)

On September 11, 2003, Dr. Munhall examined plaintiff and observed plaintiff suffered from "constant posterior cervical spine pain," "headaches, dizziness, nausea, vomiting, occasional dysphagia, and blurred vision," "left-shoulder pain and tingling in the left arm," "right-arm pain," "central low back pain extending either to the right or left low back and buttocks area," and "numbness in left leg and foot." (Doc. 13, exh. A1 at DRMS 0261-62.) Despite these symptoms, Dr. Munhall noted the outlook for plaintiff to make a full recovery was promising. (Docs. 13 at 7-8; 16 at 5.)

Plaintiff then saw Tim Warren, DC, who Dr. Gould had recommended. Dr. Warren examined plaintiff on October 6, 2003, and observed that plaintiff was 100 percent disabled and restricted from all activities his job would require. (Docs. 13 at 8; 16 at 5.)

Some time between October 2003 and November 2003, it was determined plaintiff's medical condition necessitated another surgical

procedure. On November 18, 2003, John Dickerson, MD, performed a "left C5-6 foraminotomy" on plaintiff to reduce the pain caused by compression of the nerve root. (Doc. 13, exh. A1, at DRMS 0194.) On January 5, 2004, Dr. Dickerson noted plaintiff continued to suffer from lingering pain and numbness. Dr. Dickerson evaluated an MRI of plaintiff's spine on January 22, 2004, and concluded that the lingering symptoms could not be caused by the spine. (Docs. 13 at 9; 16 at 6.)

Upon request by DRMS, Christine McCrum, RN, reviewed plaintiff's case. After reviewing the records, on May 26, 2004, McCrum noted that persons with similar medical histories can usually perform sedentary to medium tasks. McCrum further noted she intended to ask Dr. Dickerson to evaluate plaintiff's restrictions and limitations. Dr. Dickerson evaluated plaintiff and recommended no overhead work and no excessive flexion or extension of the neck. He also recommended plaintiff not lift anything more than 50 pounds. DRMS asked Drs. Gould and Warren to evaluate Dr. Dickerson's restrictions and limitations. Both Drs. Gould and Warren agreed with Dr. Dickerson's suggestions. DRMS determined these restrictions allowed plaintiff to perform medium, light, and sedentary levels of activity on a full-time basis. (Docs. 13 at 9-10; 16 at 6-8.)

In June 2004, DRMS employed Sue Howard, M.Ed., CRC, for the purpose of assessing plaintiff's earning potential. Based on plaintiff's restrictions and limitations, education, and work experience, Howard identified five occupations for which plaintiff was qualified and would pay a wage of at least $1,153.54 (50 percent of his monthly earnings while at Cessna) per month. (Docs. 13 at 11; 16

at 8-9.)

On June 29, 2004, DRMS informed plaintiff that he would no longer be receiving benefits after October 29, 2004, when the 24 months of initial Total Disability expired. (Docs. 13 at 12-13; 16 at 10.) DRMS based its decision on the work restrictions given by Dr Dickerson and concurred with by Drs. Gould and Warren and the vocational report prepared by Howard. (Doc. 13 at 13.)

On August 5, 2004, plaintiff again saw Dr. Dickerson. Dr. Dickerson amended his work release restrictions to restrict plaintiff to lifting 40 pounds and working only four to six hours each day. Dr. Dickerson also noted plaintiff could increase his work hours as tolerated.[2] On October 1, 2004, plaintiff wrote to DRMS and attached a pay stub showing he was working approximately 10 hours per week and earning $8.00 per hour. (Docs. 13 at 13-14; 16 at 10-11.)

On October 29, 2004, plaintiff appealed DRMS's denial of long-term disability benefits. Upon DRMS's request, Robert Keller, MD, reviewed plaintiff's medical records. Dr. Keller concluded that Dr. Dickerson's hourly restrictions appeared to be arbitrary, yet

---

[2] In an August 5, 2004 status report by Dr. Gould, apparently made upon review of Dr. Dickerson's August 5, 2004 work release restrictions, Dr. Gould specifically agreed with Dr. Dickerson's August 5, 2004 modifications. In the same report noting his agreement with Dr. Dickerson's modified work release plan, Dr. Gould also noted "the patient's ability to work in an occupation other than sedentary remains as previously rated at the total disability category." (Docs. 13 at 14; 16 at 10.)

Dr. Gould's two conclusions are presented, alternatively and in isolation from the other, by both parties. The court notes, however, that Dr. Gould's August 5, 2004 analysis of plaintiff's disability status is but one of the facts before the plan administrator on which a determination could have been based and will be given no more weight by the court than any of the many physician's analyses of plaintiff's work release ability in the record.

-5-

reasonable. DRMS also employed Karla Forgiel to review Howard's assessment of plaintiff's earning potential. Forgiel completed a separate evaluation and found seven occupations that met plaintiff's work restrictions and allowed plaintiff to earn at least 50 percent of his former earnings.

On March 22, 2005, DRMS again denied benefits to plaintiff, rejecting his appeal. Plaintiff brought this action to recover long-term disability-benefits. (Docs. 13 at 16-19; 16 at 12-14.) Defendant now moves for summary judgment. (Doc. 13.)

**II. SUMMARY JUDGMENT STANDARD: FRCP 56**

The usual and primary purpose of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses. See Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). Federal Rule of Civil Procedure 56(c) directs the entry of summary judgment in favor of a party who "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." An issue is "genuine" if sufficient evidence exists on each side "so that a rational trier of fact could resolve the issue either way" and "[a]n issue is 'material' if under the substantive law it is essential to the proper disposition of the claim." Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 670 (10th Cir. 1998) (citations omitted); see also Adams v. American Guarantee & Liability Ins. Co., 233 F.3d 1242, 1246 (10th Cir. 2000) (citing Adler).

Defendant initially must show both an absence of a genuine issue of material fact and entitlement to judgment as a matter of law. See Adler, 144 F.3d at 670. Because plaintiff bears the burden of proof at trial, defendant need not "support [its] motion with affidavits or

-6-

other similar materials <u>negating</u> [plaintiff's]" claims or defenses. <u>Celotex</u>, 477 U.S. at 323.  Rather, defendant can satisfy its obligation simply by pointing out the absence of evidence on an essential element of plaintiff's claim.  <u>See</u> <u>Adler</u>, 144 F.3d at 671 (citing <u>Celotex</u>, 477 U.S. at 325).

If defendant properly supports its motion, the burden then shifts to plaintiff, who may not rest upon the mere allegation or denials of its pleading, but must set forth specific facts showing that there is a genuine issue for trial.  <u>See</u> <u>Mitchell v. City of Moore</u>, 218 F.3d 1190, 1197-98 (10th Cir. 2000).  In setting forward these specific facts, plaintiff must identify the facts "by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." <u>Adler</u>, 144 F.3d at 671.  If the evidence offered in opposition to summary judgment is merely colorable or is not significantly probative, summary judgment may be granted.  <u>See</u> <u>Cone v. Longmont United Hosp. Ass'n</u>, 14 F.3d 526, 533 (10th Cir. 1994).  Plaintiff "cannot rely on ignorance of facts, on speculation, or on suspicion, and may not escape summary judgment in the mere hope that something will turn up at trial."  <u>Conaway v. Smith</u>, 853 F.2d 789, 793 (10th Cir. 1988).  Put simply, plaintiff must "do more than simply show there is some metaphysical doubt as to the material facts." <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586-87 (1986).

Certain local rules further govern the presentation of facts and evidence.  Local Rule 56.1 requires the movant for summary judgment to set forth a concise statement of material facts.  D. Kan. Rule 56.1.  Each fact must appear in a separately numbered paragraph and

each paragraph must refer with particularity to the portion of the record upon which the movant relies. See id. An opposing memorandum must contain a similar statement of facts, numbering each fact in dispute, referring with particularity to those portions of the record relied and, if applicable, stating the number of the movant's fact disputed. All material facts set forth in the statement of the movant shall be deemed admitted for the purpose of summary judgment unless specifically controverted. See Gullickson v. Southwest Airlines Pilots' Ass'n, 87 F.3d 1176, 1183 (10th Cir. 1996) (applying local rules of District of Utah). A standing order of this court also precludes drawing inferences or making arguments within the statement of facts.

The parties need not present evidence in a form that would be admissible at trial, but the content or substance of the evidence must be admissible. See Thomas v. Int'l Bus. Machs., 48 F.3d 478, 485 (10th Cir. 1995) (internal quotations and citations omitted). For example, the court will disregard conclusory statements and statements not based on personal knowledge. See Cole v. Ruidoso Mun. Schs., 43 F.3d 1373, 1382 (10th Cir. 1994) (regarding conclusory statements); Gross v. Burggraf Constr. Co., 53 F.3d 1531, 1541 (10th Cir. 1995) (requiring personal knowledge).

In the end, when confronted with a fully briefed motion for summary judgment, the court must determine "whether there is the need for a trial--whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). If sufficient

evidence exists on which a trier of fact could reasonably find for the plaintiff, summary judgment is inappropriate. See <u>Prenalta Corp. v. Colo. Interstate Gas Co.</u>, 944 F.2d 677, 684 (10th Cir. 1991).

### III. STANDARD OF REVIEW

Both parties agree their dispute is governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001-1461. (Docs. 13 at 20; 16 at 1.) Plaintiff is seeking long-term disability benefits under an employee-sponsored benefit plan and the claim is thus governed by ERISA § 1132(a)(1)(B). "[A] denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a <u>de novo</u> standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." <u>Firestone Tire and Rubber Co. v. Bruch</u>, 489 U.S. 101, 115 (1989). If the benefit plan gives the administrator or fiduciary that authority, the court must then judge the denial of benefits according to an arbitrary and capricious standard. See <u>Kimber v. Thiokol Corp.</u>, 196 F.3d 1092, 1097 (10th Cir. 1999).

Defendant bears the burden of proving that the court should review its decision under the arbitrary and capricious standard instead of conducting a <u>de novo</u> review. See <u>Kinstler v. First Reliance Standard Life Ins. Co.</u>, 181 F.3d 243, 249 (2d Cir. 1999). Defendant has not claimed its administrator has discretion over the plan. (Docs. 16, 17.)

In evaluating whether the terms of a benefit plan convey discretion to make factual determinations, the court often looks to

-9-

the language used to describe the type of proof to be provided. See Nance v. Sun Life Assur. Co. of Canada, 294 F.3d 1263, 1267 (10th Cir. 2002). Plaintiff asserts, and the court agrees, the plan's language fails to reveal the requisite intent to convey discretion upon the administrator to make factual findings or interpret the terms of the plan. Specifically, the only relevant portion of the plan discussing the claimant's duty to provide proof of his disability provides as follows:

> Subject to the terms of the Group Policy, We will pay Monthly Disability Benefits under this Certificate and any attached Riders if You become Totally Disabled while insured under the Group Policy after we receive <u>satisfactory proof of loss</u>.

(Doc. 13, exh. A1 at 467.)(emphasis added)

In <u>Nance</u>, the Tenth Circuit discussed in some detail the type of language that might convey discretion to make benefit determinations. <u>See generally</u> <u>id.</u> at 1267-68. <u>Nance</u> reviewed plan language that called for "proof," "adequate proof," "satisfactory proof," and "proof satisfactory to [the plan administrator]." <u>Id.</u> After reviewing relevant decisions by other circuits, <u>Nance</u> noted that neither "proof" nor "adequate proof" had been held sufficient to convey discretion upon an administrator, and that it was even questionable whether "satisfactory proof" would convey such discretion. <u>Id.</u> However, <u>Nance</u> held that language stating that proof must be "satisfactory to [the plan administrator]" would convey discretion upon the administrator to make factual determinations. <u>Id.</u> at 1268.

In <u>Nance</u>, the court held that requiring satisfactory proof of loss is not enough. <u>Nance</u>, 294 F.3d at 1267. The plan must specify

-10-

to whom the proof must be satisfactory. <u>Id.</u> Because defendant's plan does not specify to whom the proof must be satisfactory, the court will interpret the plan and review defendant's factual determinations <u>de novo</u>.

## IV. ANALYSIS

When deciding a motion for summary judgment under ERISA, the court looks at the administrative record to determine the reasonableness of the decision. <u>Sandoval v. Aetna Life & Cas. Ins. Co.</u>, 967 F.2d 377, 381 (10th Cir. 1992). Under ERISA, the insurer bears the burden of pointing to facts in the record that justify a denial of coverage. <u>Fought</u>, 379 F.3d at 1006 (citing <u>McGee v. Equicor-Equitable HCA Corp.</u>, 953 F.2d 1192, 1205 (10th Cir. 1992)). When performing a <u>de novo</u> review of a plan administrator's decision, the court reviews the determination for correctness based on the administrative record available to the administrator at the time, unless the plaintiff has shown additional evidence is necessary to conduct adequate <u>de novo</u> review of a benefit decision. <u>See</u> <u>Hall v. UNUM Life Ins. Co.</u>, 300 F.3d 1197, 1202-1203.

The issue is whether plaintiff is "Totally Disabled" under the plan. It is undisputed that plaintiff was "Totally Disabled" for the first 24 months. It is further undisputed that plaintiff is able to work at a job; in fact, plaintiff is currently doing so. The only issue is whether plaintiff's "work inability continues to result in a 50% or more loss of [his] Basic Monthly Earnings." (Doc. 13, exh. A1 at 0470.)

Plaintiff first argues this court should construe "work inability" to mean the work that he has been doing at the job he has

been able to find. Plaintiff argues, in the alternative, that DRMS erroneously calculated what plaintiff could earn because DRMS estimated plaintiff could perform sedentary, light and medium tasks for 20 to 30 hours each week at multiple available employments. Plaintiff contends he is only able to perform sedentary tasks for up to 20 hours each week.

### A. DEFINITION OF "WORK INABILITY"

Plaintiff asserts that "work inability" means the work he has been doing at the job he had been able to find. Under this view, plaintiff would be able to recover benefits if he was working in a job and that job was not paying him 50 percent of his Basic Monthly Earnings. Defendant responds that "work inability" means the work plaintiff is able to do. Under defendant's view, plaintiff would not be able to recover benefits so long as plaintiff has the physical ability to perform in a job that would pay him at least 50 percent of his former wages at Cessna.

"Work inability" is not defined in defendant's plan so the court must decide whether the term is ambiguous. "Whether a contract's provisions are ambiguous is a matter of law to be determined by the court." Hofer v. UNUM Life Ins. Co. of America, 441 F.3d 872, 880 (10th Cir. 2006)(quoting Flight Concepts Ltd. P'ship v. Boeing Co., 38 F.3d 1152, 1156 (10th Cir. 1994). When examining an insurance contract, whether a term is ambiguous depends upon the court's determination of how a reasonable person in the position of the insured would interpret the term. Hofer, 441 F.3d at 880.

Under plaintiff's interpretation defendant would be required to continue to pay benefits to plaintiff if he is unable to earn 50

percent of his Basic Monthly Earnings for any reason.  That is simply not the purpose of long-term disability insurance and, specifically, defendant's long-term disability plan.  This is clear by looking at the plan itself.  The plan provides disability coverage up to age 65, but distinguishes disability coverage from mental illness coverage, which lasts only 24 months.  (Doc. 13, exh. A1 at DRMS 464.)  The plan implies that the disability coverage applies to physical disability only, providing additional coverage for other conditions such as mental illness.  The policy additionally provides for situations in which benefits will not be paid, such as injuries resulting from military service, war, or self-inflicted injuries.  (Doc. 13, exh. A1 at DRMS 473.)  These exclusions lend further support to the position that the plan only covered work inability resulting from physical disability.

There is also a strong argument that to interpret the plan as plaintiff suggests would be to allow anyone covered under a long-term disability plan such as this to stop working for almost any reason and recover benefits under the plan.  The court declines to adopt plaintiff's interpretation and concludes that "work inability" means one's physical limitations to perform a job.

**B.   PLAINTIFF'S WORK LIMITATIONS**

Plaintiff argues DRMS incorrectly estimated his potential earnings by classifying him as able to perform sedentary, light and medium work for 20 to 30 hours a week.  Defendant argues that its decision is both supported by the record and by plaintiff's physicians.

In a de novo review of DRMS's decision, the court looks at all

-13-

of the evidence to determine whether plaintiff's classification is reasonable and supported by the evidence. See Sandoval, 967 F.2d at 381. After reviewing the evidence the court concludes DRMS's decision to classify plaintiff as able to perform sedentary, light, and medium work for 20 to 30 hours a week was reasonable.

Dr. Dickerson recommended on June 1, 2004, that plaintiff could return to work provided he didn't lift anything more than 50 pounds and limited excessive and repeated flexion or extension of his neck. (Doc. 13, exh. A1 at DRMS 180.) Dr. Dickerson was plaintiff's surgeon for his second surgery. Further, Drs. Gould and Warren agreed that the above restrictions were appropriate. (Doc. 13, exh. A1 at DRMS 173, 179.) Dr. Warren first said plaintiff was completely disabled and restricted from all activity, but then later agreed with Dr. Dickerson's restrictions. After Dr. Dickerson again met with plaintiff on August 5, 2004, he amended the restrictions to lifting only 40 pounds or less and adding that plaintiff should work only 4 to 6 hours per day. (Doc. 13, exh. A1 at DRMS 146.)

The record is clear that plaintiff's doctors believed he was recovering and accordingly decreased the restrictions over time from being completely disabled to being able to work 20 to 30 hours a week. Plaintiff's claim that he is limited to sedentary duties for only 20 hours is simply not supported by the record. Plaintiff further asserts the employment opportunities presented in the administrative record are nonexistent. This is one example of plaintiff's failure to comply with local rule 56.1. In response to evidence in the record of employment opportunities, plaintiff asserts: "The employment opportunities conjured up by defendant's expert do not exist." (Doc.

16 at 9.)  Some of the common definitions of "conjure" are to conspire and to create as if by magic.  Nothing of the kind occurred in this case.  Plaintiff obviously does not agree with the evidence of work opportunities but he has pointed to no contrary evidence.

**V.   CONCLUSION**

Plaintiff has not pointed to any evidence showing he meets the definition of "Totally Disabled" under his long-term disability plan. The decision by DRMS to deny benefits was reasonable and adequately supported by the administrative record.  Defendant's motion for summary judgment (Doc. 12.) is granted.

A motion for reconsideration of this order under Local Rule 7.3 is not encouraged.  The standards governing motions to reconsider are well established.  A motion to reconsider is appropriate where the court has obviously misapprehended a party's position or the facts or applicable law, or where the party produces new evidence that could not have been obtained through the exercise of reasonable diligence. Revisiting the issues already addressed is not the purpose of a motion to reconsider and advancing new arguments or supporting facts which were otherwise available for presentation when the original motion was briefed or argued is inappropriate.  Comeau v. Rupp, 810 F. Supp. 1172 (D. Kan. 1992).  Any such motion shall not exceed three pages and shall strictly comply with the standards enunciated by this court in Comeau v. Rupp.  The response to any motion for reconsideration shall not exceed three pages.  No reply shall be filed.

IT IS SO ORDERED.

　　　　Dated this ___18th___ day of August 2006, at Wichita, Kansas.


　　　　　　　　　　　　　　　　　　S/ Monti Belot

　　　　　　　　　　　　　　　　　　Monti L. Belot

　　　　　　　　　　　　　　　　　　UNITED STATES DISTRICT JUDGE